## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MULTIMEDIA TECHNOLOGIES, INC., GEOFFREY ANDERSON, and PEACH HOSPITALITY OF GEORGIA, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO. _____ |
| CITY OF ATLANTA, GEORGIA, | ) ) | |
| Defendant. | ) | |

## **COMPLAINT**

Plaintiffs Multimedia Technologies, Inc. ("Multimedia"), Geoffrey Anderson ("Anderson"), and Peach Hospitality of Georgia, LLC ("Peach") (collectively, "Plaintiffs") file this Complaint against Defendant City of Atlanta, Georgia ("City of Atlanta") and state as follows:

### **Introduction**

This lawsuit arises out of the City of Atlanta's attempt to retroactively apply the unconstitutional content-based Sign Ordinances within Chapter 28 of the 1982 Atlanta Zoning Ordinance (the "1982 Sign Code") against two signs that have been permitted since 1993 and that have been continuously maintained for over 25 years.

Multimedia owns a Wall Sign and a Rooftop Sign (collectively, the "Subject Signs") that are located at the property owned by Peach at 1655 Peachtree Street, N.E., Atlanta, Georgia (the "Property").  It is undisputed that the Subject Signs were originally permitted in 1993, that they were erected in accordance with their permits, and that they have been continuously maintained in compliance with such permits. In fact, the City of Atlanta has revalidated these permits on numerous occasions since 1993.

Despite these facts, over 27 years after these signs were originally permitted, the City of Atlanta is now reversing course and claiming that the Subject Signs allegedly do not comply with the 1982 Sign Code and, thus, are "illegal signs" under the City of Atlanta's current Sign Ordinance.  The City of Atlanta relies on this retroactive application of the 1982 Sign Code as its basis for (1) demanding that Multimedia remove the Subject Signs; and (2) issuing arrest citations to Anderson, the CEO of Multimedia, and to Harrison Coleman, the registered agent for Peach, for allegedly maintaining "illegal signs."  The City of Atlanta claims that it is taking such action because the Subject Signs were determined to be unlawful under the 1982 Sign Code in a 2019 Court Order by the Fulton County Superior Court.  That Order, however, did not address the issue of whether the 1982 Sign Code is constitutional.

The lack of consideration of whether the 1982 Sign Code is constitutional is critical because the 1982 Sign Code is an unconstitutional content-based law that violates the First and Fourteenth Amendments of the Constitution of the United States.  The City of Atlanta is aware of this defect as evidenced by the fact that it amended its Sign Ordinance in 2015 in response to the United States Supreme Court's landmark decision in *Reed v. Town of Gilbert, Ariz.*, 125 S.Ct. 2218 (2015). This amendment, among other things, attempted to eliminate content-based restrictions in the sign code, including any distinctions between business identification/on-site signs and general advertising/off-site signs.  It is well settled that such content-based restrictions are presumptively unconstitutional violations of the First Amendment, and the City of Atlanta has not provided any purported justifications for them that can survive strict scrutiny.  Tellingly, the provision in the 1982 Sign Code that the City of Atlanta claims to rely on is no longer part of the current Sign Ordinance.  Thus, the City of Atlanta is attempting to enforce a provision in a Sign Code, which has not existed since at least 2015.

Thus, the City of Atlanta's attempt to retroactively apply the 1982 Sign Code against Plaintiffs is unconstitutional.  Accordingly, Plaintiffs are entitled to a declaration that the City of Atlanta's 1982 Sign Ordinance is unconstitutional and injunctive relief that prohibits the City of Atlanta from taking adverse action against

Plaintiffs or the Subject Signs based on its new position that the Subject Signs were not lawfully erected under the 1982 Sign Ordinance.

## **Parties, Jurisdiction, And Venue**

1.

Multimedia is a Georgia corporation with its principal place of business located at 2931 Paces Ferry Road, Suite 150, Atlanta, Georgia 30339.

2.

Anderson is a citizen of Fulton County, Georgia, and he is the CEO of Multimedia.

3.

Peach is a Georgia limited liability corporation with its principal place of business located at 1655 Peachtree Street, N.E., Atlanta, Georgia, 30309.

4.

The City of Atlanta is a municipality that is located in Fulton County, Georgia. The City of Atlanta may be served as authorized by law.

5.

This declaratory judgment action is brought pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

6.

An actual justiciable controversy exists between Plaintiffs and the City of Atlanta within the meaning of 28 U.S.C. § 2201 regarding the constitutionality of the City of Atlanta's 1982 Sign Code and, thus, whether the City of Atlanta may seek to retroactively apply the 1982 Sign Code to claim that Multimedia's signs are "illegal signs."

7.

Plaintiffs' claims arise under the First, Fifth, and Fourteenth Amendments of the United States Constitution.  Thus, this Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this civil action alleges a violation of the United States Constitution.

8.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**The Subject Signs Were Originally Permitted In 1993
Under The 1982 Sign Code**

9.

Multimedia is the owner and operator of a Rooftop Sign and Wall Sign that are located at the Property.

10.

Peach is the owner of the Property.

11.

The original permit for the Rooftop Sign was issued on or around May 27, 1993.  The original permit number for this sign is S9300366, and this permit authorized a business identification Rooftop Sign at the Property.  Likewise, the original permit for the Wall Sign also was issued on or around May 27, 1993.  The original permit number for this sign is S9300365, and this permit authorized a business identification wall sign at the Property.  These facts are admitted in the Affidavit of Gloria Peters, who is a Plan Review Specialist, Sr. within the Office of Buildings, City of Atlanta, Department of City Planning.  A true and accurate copy of the Affidavit of Gloria Peters is attached hereto as Exhibit 1.[1]

12.

In 1993, the Property was regulated by the 1982 Atlanta Zoning Ordinance. In 1993, Chapter 28 of the 1982 Atlanta Zoning Ordinance contained the 1982 Sign

---

[1] The Affidavit of Gloria Peters was submitted by the City of Atlanta to the Board of Zoning Adjustment of the City of Atlanta ("BZA") as part of Appeal No. V-19-059, which is a 2019 appeal of a permitting decision regarding the Subject Signs before the BZA.

Code.  A certified copy of Chapter 28 of the 1982 Atlanta Zoning Ordinance as it existed in 1993 is attached hereto as Exhibit 2.[2]

13.

The 1982 Sign Code contains a distinction between on-premises signs and off-premises signs.  Specifically, Section 16-28.017(3)(a) of the 1982 Sign Code states: "*Business signs; on-site sign*: A sign which directs attention to a business, profession, product, service, activity or entertainment conducted, sold or offered on the premises on which the sign is located.  Such signs may also be referred to as on-site signs."  On the other hand, Section 16-28.017(3)(b) of the 1982 Sign Code defines general advertising signs as "off-site signs."  Specifically, Section 16-28.017(3)(b) states: "*General advertising sign; off-site sign*: A sign which is for the purpose of directing attention to a business profession, product, service, activity, accommodation, attraction or entertainment not principally conducted, sold or offered on the premises.  Such signs may also be referred to as off-site signs."

14.

The 1982 Sign Code imposes restrictions on off-site signs that are not applicable to on-site signs.  Moreover, the 1982 Sign Code imposes restrictions on

---

[2] The certified copy of Chapter 28 of the Atlanta Zoning Ordinance as it existed in 1993 was submitted by the City of Atlanta to the BZA as part of Appeal No. V-19-059.

on-site signs and off-site signs that are not applicable to signs promoting new businesses. *See* Section 16-28.019(6) of the 1982 Sign Code.

15.

Additionally, under Section 16-28.019(1) of the 1982 Sign Code, various types of signs are exempted from sign permit requirements. For instance, the 1982 Sign Code exempts the following signs from sign permit requirements: (1) temporary campaign signs; (2) bulletin boards, which are defined as "A sign which primarily displays the name of public, charitable, educational or religious organization and/or institution and the upcoming events of such;" and (3) Grand opening signs, which are defined as "Signs advertising the 30-day grand opening period for a new business (as defined in section 16-28.019(6))."

16.

Thus, the 1982 Sign Code imposed a permit requirement on signs with disfavored content, while allowing signs with favored content to be erected without a permit.

**The Subject Signs Have Been Revalidated By
The City Of Atlanta Numerous Times**

17.

The Subject Signs were erected pursuant to the two permits that the City of Atlanta issued for such signs in or around May 1993. The Subject Signs were

completed in 1994, and they were constructed in accordance with the terms of the permits for such signs. The Subject Signs have been part of the Atlanta skyline since then.

18.

After the Subject Signs were originally permitted, the Sign Ordinance within the Atlanta Zoning Ordinance was amended in 1994 and the Property was rezoned in 2001. As stated by Ms. Peters in her affidavit, "[a]fter these changes, the [Subject Signs] became legal, non-conforming signs."

19.

Subsequent to the original permits issued by the City of Atlanta in 1993, the City of Atlanta issued additional permits for the Subject Signs at least 15 times between January 2002 and April 2008 (the "Copy Permits"). These Copy Permits were issued because the Subject Signs were originally permitted as business identification signs, and a new permit was issued each time there was a change of advertiser on the Subject Signs. Specifically, the City of Atlanta reviewed and approved Copy Permits at least 11 times for the Wall Sign and at least four (4) times for the Rooftop Sign. True and accurate copies of the Copy Permits are attached

hereto as Exhibit 3.[3]  Each time the City of Atlanta issued a Copy Permit it reviewed the legality of the sign that received the permit, and it determined that such sign was in compliance with applicable law.

20.

The Rooftop Sign and the Wall Sign always have complied with their permits. As Ms. Peters admitted in her affidavit: "Throughout the past twenty-five plus years the subject signs have always been in the same location, same size, height and been in public view advertising various tenants who occupy and continue to occupy the building."

**The City Of Atlanta Amends Its Sign Ordinance In 2015 In response To The United States Supreme Court's Landmark Decision In _Reed v. Town of Gilbert, Ariz._, 135 S.Ct. 2218 (2015).**

21.

In June 2015, the United States Supreme Court issued a decision in _Reed v. Town of Gilbert, Ariz._, 135 S.Ct. 2218 (2015).   In _Reed_, the Supreme Court recognized that "[c]ontent-based laws – those that target speech based on its communicative content – are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling

---

[3] Multimedia believes that additional Copy Permits were issued since 1993.  The Copy Permits attached as Exhibit 3 are the ones that Multimedia has been able to locate.

-10-

state interests."  The Supreme Court held that one category of content-based laws is government regulation of speech "if a law applies to particular speech because of the topic discussed or the idea or message expressed."  The Supreme Court further held that there is "a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be 'justified without reference to the content of the regulated speech,' or that were adopted by the government 'because of disagreement with the message [the speech] conveys.'"

22.

Ultimately, in *Reed*, the Supreme Court concluded that the Town of Gilbert's sign code was "content based on its face," and that it was an unconstitutional content-based regulation of speech that could not survive strict scrutiny.

23.

The Eleventh Circuit has recognized that the decision in *Reed* "announced a sea change in the traditional test for content neutrality under the First Amendment." *Wollschlaeger v. Governor of Florida*, 848 F.3d 1293, 1332-33 (11th Cir. 2017).

24.

In response to *Reed*, the City of Atlanta amended its sign ordinance with a replacement ordinance in 2015.  Specifically, in or around November 2015, the City

of Atlanta adopted Ordinance 15-0-1394, which is titled as an Ordinance to Amend

Chapter 28A (City of Atlanta Sign Ordinance) of the 1982 Atlanta Zoning Ordinance

in Response to the United States Supreme Court Decision in *Reed v. Town of Gilbert,*

*Arizona*; and for other Purposes (the "2015 Ordinance" or "Current Sign Code").  A

true and accurate copy of the 2015 Ordinance is attached hereto as Exhibit 4[4].

25.

The recitals in the 2015 Ordinance contain numerous references to *Reed*.  For

instance, one of the recitals in the 2015 Ordinance states: "WHEREAS, on June 18,

2015, the United States Supreme Court held unanimously in *Reed v. Town of Gilbert,*

*Arizona* 2015 WL 2473374, that the provisions of the Town of Gilbert's Sign Code,

which regulate signs by category according to the type of information they convey,

are content-based and therefore subject to strict scrutiny under the First Amendment

of the United States Constitution."  Moreover, another recital in the 2015 Ordinance

states: "WHEREAS, it is in the best interest of the health, safety and welfare of the

citizens of the City of Atlanta to adopt amendments to the Atlanta Sign Ordinance

in response to the United States Supreme Court's opinion in *Gilbert*."

---

[4] This Exhibit is the copy of the 2015 Ordinance that appears on this City of Atlanta
website: https://www.atlantaga.gov/home/showpublisheddocument?id=20247

26.

As part of the response to *Reed*, the City of Atlanta's Current Sign Code eliminated certain content-based restrictions, including any distinctions between business identification/on-site signs and general advertising/off-site signs. Section 16-28.019 of the 1982 Sign Code, which contains numerous content-based restrictions, is not included in the City of Atlanta's Current Sign Code.

27.

Under Section 16-28A.004 of the City of Atlanta's Current Sign Code, a "Nonconforming Sign" is defined as "[a] sign that was lawfully erected prior to the adoption of this chapter and does not conform to the requirements of this chapter or other provisions of part 16."

28.

The Current Sign Code allows a nonconforming sign to remain in use as long as the owner of such sign continually maintains it. The City of Atlanta admitted this fact in a Hearing Brief that it filed in Fulton County Superior Court on or around September 6, 2019. A true and accurate copy of this Hearing Brief is attached hereto as Exhibit 5. Thus, the Subject Signs are lawful, nonconforming signs as long as they were lawfully erected prior to the adoption of the Current Sign Code and are continuously maintained.

-13-

**The City Of Atlanta Issued Conversion Permits Approving The Upgrade Of The Subject Signs And Took The Position That The Subject Signs Are Legal, Nonconforming Signs In Litigation**

29.

On or around December 7, 2018, Multimedia submitted permit applications to upgrade the sign changing technology for the Subject Signs. On or around February 15, 2019, the City of Atlanta issued permits BS-201801047 and BS-201900119 (the "Conversion Permits") approving the upgrades of the Wall Sign and Rooftop Sign, respectively, to LED sign faces.

30.

The decision to issue the Conversion Permits was challenged by three parties in the following appeal to the BZA: Appeal No. V-19-059 (the "BZA Appeal").[5] The BZA Appeal only challenged the issuance of the Conversion Permits, and it did not seek to set aside the original 1993 permits that were issued for the Subject Signs (or any other permits for such signs, except the Conversion Permits). In the BZA Appeal, the BZA denied the challenge to the Conversion Permits.

---

[5] The three parties that appealed the decision to the Conversion Permits to the BZA are Janet Lavine for the Hebrew Benevolent Congregation a/k/a The Temple, Steve Baile for Selig Enterprises, and Hament Desai for America's Best Value Inn.

-14-

31.

Two of the challenging parties then appealed the BZA's decision regarding the Conversion Permits to the Superior Court of Fulton County. [6]  This appeal to the Superior Court was Civil Action No. 2019CV323401 (the "Superior Court Appeal"). Again, the Superior Court Appeal only challenged the issuance of the Conversion Permits, and it did not seek to set aside the original 1993 permits that were issued for the Subject Signs (or any other permits for such signs, except the Conversion Permits).

32.

In the Superior Court Appeal, the Superior Court reversed the decision by the BZA and held that the Conversion Permits were "wrongly issued."  In reaching this conclusion, the Superior Court reasoned that the original 1993 permits were wrongly issued pursuant to the 1982 Sign Code.[7]  The Superior Court, however, did not set

---

[6] The two parties that appealed the BZA's decision regarding the Conversion Permits were Hament Desai and the Hebrew Benevolent Congregation a/k/a The Temple.

[7] Plaintiffs dispute the findings by the Superior Court in the Superior Court Appeal, and Plaintiffs reserve all rights to challenge these findings, and they reserve all their arguments that the original permits for the Subject Signs were properly issued under the 1982 Sign Code in response to any enforcement action by the City of Atlanta. This action, however, focuses on whether the 1982 Sign Code is unconstitutional.

aside the original 1993 permits or any other permits for the Subject Signs, except the Conversion Permits.

33.

In the Superior Court Appeal, the Superior Court did not analyze whether the 1982 Sign Code was constitutional.  Rather, its analysis relating to the 1982 Sign Code was limited to whether the original 1993 permits were properly issued pursuant to the 1982 Sign Code.  The Superior Court did not order the City of Atlanta to do anything with respect to the Subject Signs, and it did not foreclose any challenges that Plaintiffs might have to any action by the City of Atlanta seeking to remove the Subject Signs, whether such challenges be a constitutional challenge or other challenges under any ordinances.  Moreover, Multimedia and the City of Atlanta were not adverse to each other in the Superior Court Appeal.

**The City Of Atlanta Demands That The Subject Signs Be Removed And Issues Arrest Citations For Purportedly "Illegal Signs"**

34.

After the decision by the Superior Court, the City of Atlanta Department of City Planning Office of Buildings hand delivered a Zoning Correction Notice for 1655 Peachtree St., NE Atlanta, GA 30309 (the "Zoning Correction Notice") to Multimedia on or around November 17, 2020.  In the Zoning Correction Notice, the City of Atlanta stated that the Subject Signs "have been determined to be illegal non-

conforming signs per City Code 16-28A.013(a)(ii), as ruled by Judge McBurney's

Final Order from the Superior Court of Fulton County," and that such "signs are now

out of compliance and must be removed."   The Zoning Correction Notice further

stated: "You are hereby ordered to correct this violation by removing the unlawful

signs from the existing structure within 30 days of receipt of this notice.  Failure to

correct the violation is unlawful and may subject you to fines and/or prosecution in

the municipal court of Atlanta, Georgia and upon conviction a penalty of up to

$1,000 or 180 days in jail or both may be imposed for each violation."  A true and

accurate copy of the Zoning Correction Notice is attached hereto as Exhibit 6.

35.

In response, Multimedia (through counsel) sent a letter to the City of Atlanta

Department of City Planning Office of Buildings on or around December 9, 2020

(the "December 2020 Letter").  In the December 2020 Letter, Multimedia requested

that the citation be deferred to allow it to explore its rights and remedies and to confer

with the City of Atlanta.  A true and accurate copy of the December 2020 Letter is

attached hereto as Exhibit 7.

36.

The  City  of  Atlanta  ignored  this  December  2020  Letter.    Instead  of

responding, on or around December 18, 2020, the City of Atlanta issued arrest

citations to Anderson and Harrison Coleman, Peach's registered agent.  The citations list the alleged violations as "illegal signs" against section 16-28A.013(a)(ii), the "1982 Atlanta Zoning Ordinance," and "Chapter 28A."  They also describe the alleged conduct that "the accused did" as follows: "Fail to remove two unlawful non-conforming signs from the building . . . that were ruled to be illegal pursuant to Final Order (2019CV323401) issued by Judge McBurney of the Superior Court of Fulton County on December 12, 2019."  A true and accurate copy of these Arrest Citations are attached hereto as Exhibits 8 and 9.  These Arrest Citations were followed by two additional Arrest Citations, issued to the same individuals with different citation numbers.  These additional Arrest Citations are attached hereto as Exhibits 10 and 11.

37.

The initial Arrest Citations to Anderson and Harrison Coleman commanded them to appear at the Municipal Court General Division of the City of Atlanta on March 8, 2021.  The hearing for these Arrest Citations was continued to April 9, 2021.

## COUNT I: DECLARATORY JUDGMENT

38.

Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 9 through 37 as though fully set forth herein.

39.

The 1982 Sign Code is a content-based law that unlawfully restricts both commercial and noncommercial speech and impermissibly discriminates among both commercial and noncommercial speech in violation of the First Amendment and Fourteenth Amendment by including the following:

a)  Regulations that distinguish on-premises and off-premises signs by their content. *Compare* Section 16-28.017(3)(a) of the 1982 Sign Code *with* Section 16-28.017(3)(b) of the 1982 Sign Code; *see also* Section 16-28.019 of the 1982 Sign Code.

b)  Regulations imposing a permit requirement on signs with disfavored content, while allowing signs with favored content to be regulated without a permit. *See* Section 16-28.019 of the 1982 Sign Code.

c)  Regulations imposing restrictions on signs containing off-premises content that are not applicable to signs containing on-premises content. *See* Section 16-28.019 of the 1982 Sign Code.

d)      Regulations that limit off-premises signs from certain locations that do not regulate on-premises signs from such locations.  *See* Section 16-28.019 of the 1982 Sign Code.

e)      Regulations that prohibit certain signs based on content while allowing other types of signs based on their content.  *See* Section 16-28.019 of the 1982 Sign Code.

40.

Because 1982 Sign Code is content based on its face (like the sign code at issue in *Reed*), it is subject to strict scrutiny.  The purported justifications for the 1982 Sign Code do not survive strict scrutiny.  The unconstitutional provisions in the 1982 Sign Code are not severable from the remainder of the 1982 Sign Code.  Thus, the 1982 Sign Code should be declared unconstitutional in its entirety.

41.

The City of Atlanta recognized that 1982 Sign Code is unconstitutional as evidenced by the fact that the City of Atlanta amended its sign ordinance in response the *Reed* decision by the U.S. Supreme Court.  Tellingly, the provision in the 1982 Sign Code that the City of Atlanta purports to rely on is not included in the Current Sign Code.

42.

Despite these facts, the City of Atlanta seeks to retroactively apply the 1982 Sign Code to the Subject Signs to claim that they were unlawful under the 1982 Sign Code and, thus, are illegal signs under the Current Sign Code.

43.

The 1982 Sign Code, on its face and as applied, is an unconstitutional content-based speech restriction that violates the First Amendment of the United States Constitution as incorporated and applied to the states through the Fourteenth Amendment.

44.

An actual controversy exists between Plaintiffs and the City of Atlanta as to whether the 1982 Sign Code, on its face and as applied, violates the First and Fourteenth Amendments of the United States Constitution. If the 1982 Sign Code is unconstitutional, then the City of Atlanta cannot claim that the Subject Signs were not lawfully erected pursuant to the 1982 Sign Code and, thus, cannot claim that such signs are "illegal signs."

45.

A Declaratory Judgment is necessary to determine whether the 1982 Sign Code, on its face and as applied, is unconstitutional and unenforceable. Plaintiffs

respectfully request that this Court declare that the 1982 Sign Code, on its face and as applied, is unconstitutional and unenforceable, and that the City cannot retroactively apply it against Plaintiffs to claim that the Subject Signs were not lawfully erected.

## COUNT II: VIOLATION OF THE RIGHT TO FREEDOM OF SPEECH UNDER THE FIRST AND FOURTEENTH AMENDMENTS AND REQUEST FOR INJUNCTIVE RELIEF

46.

Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 9 through 37 as though fully set forth herein.

47.

The City of Atlanta is retroactively applying the 1982 Sign Code as a purported basis to (1) issue arrest citations to Anderson and to Peach's registered agent and (2) require Multimedia to remove the Subject Signs.

48.

The 1982 Sign Code, on its face and as applied, is an unconstitutional content-based speech restriction that violates the First Amendment of the United States Constitution as incorporated and applied to the states through the Fourteenth Amendment.

49.

The City of Atlanta's actions in enforcing and threatening to retroactively enforce the 1982 Sign Code against Plaintiffs have caused Plaintiffs to suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law.

50.

Plaintiffs seek a permanent injunction against the City of Atlanta, ordering it to cease and desist from retroactively applying the unconstitutional 1982 Sign Code against them to claim that the Subject Signs are "illegal signs."

## COUNT III: VIOLATION OF 42 U.S.C. § 1983: GOVERNMENT TAKING AND REQUEST FOR INJUNCTIVE RELIEF

51.

Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 9 through 37 as though fully set forth herein.

52.

The City of Atlanta's actions in enforcing and threatening to retroactively enforce the 1982 Sign Code against Plaintiffs will deprive Plaintiffs of rights, privileges and immunities secured by the U.S. Constitution and Federal Law.

Multimedia and Peach possess reasonable investment-backed expectations in their use of their property, continuously established for years under permit and

approval from the City of Atlanta, and the City of Atlanta has no legitimate government interest in retroactively enforcing the 1982 Sign Code -- a since replaced and unconstitutional law -- where such would deprive Multimedia and Peach of reasonable economic use of their property.

53.

The City of Atlanta's actions in attempting to enforce and threatening to retroactively enforce the 1982 Sign Code against Plaintiffs constitute an unconstitutional taking of Multimedia's property and Peach's property without paying just compensation as required under the Fifth and Fourteenth Amendments of the U.S. Constitution.

54.

Multimedia and Peach seek a permanent injunction against the City of Atlanta, ordering it to cease and desist from retroactively applying the 1982 Sign Code against Plaintiffs as such will result in an unconstitutional taking of property in violation of their rights of due process and just compensation.

55.

In the alternative, Multimedia and Peach seek damages to provide just compensation for the deprivation of their economic use of their respective property in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that judgment be entered against the City of Atlanta as follows:

a)   A declaration that the 1982 Sign Code is unconstitutional and unenforceable, and that it cannot be retroactively applied against Plaintiffs with respect to the Subject Signs;

b)   A permanent injunction be entered against the City of Atlanta that prohibits it from retroactively applying the unconstitutional 1982 Sign Code against Plaintiffs with respect to the Subject Signs;

c)   A permanent injunction be entered against the City of Atlanta that prohibits it from retroactively applying the 1982 Sign Code to engage in an unconstitutional taking of Multimedia's property and Peach's property.

d)   In the alternative to a permanent injunction prohibiting the City of Atlanta from engaging in an unconstitutional taking, damages, in an amount to be determined at trial, to provide just compensation for the deprivation of Multimedia's economic use of its property and Peach's economic use of its property.

Respectfully submitted this 29th day of March, 2021.

> */s/ Richard L. Robbins*
> Richard L. Robbins
> Georgia Bar No. 608030
> rrobbins@robbinsfirm.com
> Craig G. Kunkes
> Georgia Bar No. 963594
> ckunkes@robbinsfirm.com
> Robbins Ross Alloy Belinfante Littlefield LLC
> 500 14th Street, N.W.
> Atlanta, Georgia 30318
> Telephone:   (678) 701-9381
> Facsimile:    (404) 856-3255
>
> *Attorneys for Plaintiffs Multimedia*
> *Technologies, Inc. and Geoffrey Anderson*
>
>
> */s/ Ken E. Jarrard*
> Ken E. Jarrard
> Georgia Bar No. 389550
> kjarrard@jarrard-davis.com
> JARRARD & DAVIS, LLP
> 222 Webb Street
> Cumming, Georgia 30040
> Telephone: (678) 455-7150
>
> *Attorney for Plaintiff*
> *Peach Hospitality of Georgia, LLC*