# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

MULTIMEDIA TECHNOLOGIES,
INC., GEOFFREY ANDERSON, and
PEACH HOSPITALITY OF
GEORGIA, LLC,

       Plaintiffs,

v.

CITY OF ATLANTA, GEORGIA,

       Defendant.

Civil Action No.
1:21-cv-01280-VMC

## OPINION AND ORDER

Before the Court is the Motion of Plaintiffs Multimedia Technologies, Inc. ("Multimedia"), Geoffrey Anderson ("Anderson"), and Peach Hospitality of Georgia, LLC ("Peach") (collectively, "Plaintiffs") for Summary Judgment ("Motion," Doc. 36).

On July 29, 2022, the Court enter an Order and Notice of Intent to Enter Judgment Independent of the Motion under Federal Rule of Civil Procedure 56(f) in favor of nonmovant City of Atlanta (the "City") on jurisdictional grounds. The Parties filed supplemental briefs and the Motion is now ripe for resolution.

**Background[1]**

Multimedia owns a Wall Sign and a Rooftop Sign (collectively, the "Subject Signs") that are located at the property owned by Peach at 1655 Peachtree Street, N.E., Atlanta, Georgia (the "Property"). A picture of the Subject Signs follows:



In 1993, the Property was regulated by the 1982 Atlanta Zoning Ordinance. (Pls.' Statement of Undisputed Material Facts ("SUMF") ¶ 1, Doc. 36-4). Chapter 28 of the Atlanta Zoning Ordinance contains the 1982 Sign Code, as it existed in 1993. (*Id.* ¶ 2). Section 16-28.019 of the 1982 Sign Code generally requires signs to be permitted before they can be erected, located, or maintained.  (*Id.* ¶ 3). Section

---

[1] The following is largely restated from the Court's prior Order.

16-28.019(1) of the 1982 Sign Code, however, contains numerous exemptions from this sign permit requirement. (Id. ¶ 4). Specifically, Section 16-28.019(1) exempts the following eight "signs or activities related to signs" from the sign permit requirement:

(a) *Address or identification signs*: One (1) sign, not exceeding two (2) square feet in surface area, indicating the address and/or the name of the occupant and/or premises, or the accessory use of a dwelling for a home occupation or for professional purposes.

(b) *Temporary campaign signs*: Temporary campaign signs displayed on private property, not exceeding 35 square feet in surface area, used in connection with political campaigns or civic non-commercial health, safety or welfare campaigns, provided that all such signs shall exhibit the date of the conclusion of the campaign and shall be removed within 15 days of the date of conclusion.

(c) *Memorial signs or tablets*: Memorial signs or tablets, names of buildings, and date of erection, when part of any masonry surface or constructed of bronze or other incombustible materials.

(d) *Bulletin boards*: A sign which primarily displays the name of public, charitable, educational or religious organization and/or institution and the upcoming events of such.

(e) *Temporary construction signs*: Temporary construction signs shall be allowed without permit as follows:

1. Signs denoting the architect, developer, statistical data about the building, engineer and/or contractor when placed upon the

3

premises of work under construction or involving alteration or removal, not exceeding 15 square feet in surface area in R-1 through R-G districts and 50 square feet in surface area in other districts.

2. Signs warning of special hazards or required precautions not to exceed a size reasonable necessary for the purpose intended. All such temporary construction signs shall be removed when no longer necessary, or within seven (7) days after completion of the project.

(f) *Temporary real estate signs*: One (1) unlighted real estate sign advertising the sale, rental, lease, and one (1) unlighted sign indicating that a building or buildings are open for inspection, erected on the property. . . .

(g) Signs indicating or limiting access to, or directing traffic movements on, premises. Signs indicating or limiting access to, or directing vehicular or traffic movement on, private premises, in such number and sizes as may be reasonably necessary, provided that no such sign shall exceed four (4) square feet in area or bear advertising matter. . . .

(h) Grand opening signs: Signs advertising the 30-day grand opening period for new businesses (as defined in section 16-28.019(6)) shall be exempt from a permit.

(Id.)

The original permits for the Subject Signs were issued by the City on or around May 27, 1993. (Id. ¶ 6, *admitted,* Def.'s Resp. to SUMF ("RSUMF") ¶ 6). Section 16-28.019 of the 1982 Sign Code was applied to this permitting decision for the Subject Signs. (Id. ¶ 7, *admitted,* RSUMF ¶ 7). After these permits were issued,

the Subject Signs were erected in compliance with such permits. They have been part of the Atlanta skyline since then. (*Id.* ¶ 8).

Subsequent to the original permits issued by the City in 1993, the City issued additional permits for the Subject Signs at least 15 times between January 2002 and April 2008 (the "Copy Permits"). (*Id.* ¶ 9). Specifically, the City reviewed and approved Copy Permits at least 11 times for the Wall Sign and at least four (4) times for the Rooftop Sign. (*Id.*). Each time the City issued a Copy Permit, it reviewed the legality of the sign that received the permit, and it determined that such sign was either in compliance with applicable law or legally non-conforming. (*Id.* ¶ 10, admitted in part, RSUMF ¶ 10).

Throughout the past twenty-five plus years, the subject signs have always been in the same location, have had the same size and height, and been in public view advertising various tenants who occupy and continue to occupy the building. (RSUMF ¶ 11).

In June 2015, the United States Supreme Court issued its decision in *Reed v. Town of Gilbert, Arizona*, 576 U.S. 155 (2015). In *Reed*, the Supreme Court held that the Town of Gilbert's sign code was "content based on its face," and that it was an unconstitutional content-based regulation of speech that could not survive strict scrutiny. *Id.* at 159, 164.

In response to *Reed*, the City amended its sign ordinance in 2015. Specifically, in or around November 2015, the City adopted Ordinance 15-O-1394, which is titled as an Ordinance to Amend Chapter 28A (City of Atlanta Sign Ordinance) of the 1982 Atlanta Zoning Ordinance in Response to the United States Supreme Court Decision in *Reed v. Town of Gilbert, Arizona*; and for other Purposes (the "2015 Ordinance"). (SUMF ¶ 13, *admitted*, RSUMF ¶ 13). The provisions in Section 16-28.019 of the 1982 sign code are not included in the 2015 Ordinance. (RSUMF ¶ 16). The City has acknowledged that Section 16-28.019 of the 1982 Sign Code was removed to comply with *Reed*. (SUMF ¶ 17).

Under Section 16-28A.004 of the 2015 Ordinance, a "Nonconforming Sign" is defined as "[a] sign that was lawfully erected prior to the adoption of this chapter and does not conform to the requirements of this chapter or other provisions of part 16." (*Id.* ¶ 18, *admitted*, RSUMF ¶ 18). The 2015 Ordinance allows a nonconforming sign to remain in use as long as the owner of such sign continually maintains it. (*Id.* ¶ 19, *admitted*, RSUMF ¶ 19).

On or around December 7, 2018, Multimedia submitted permit applications to upgrade the sign changing technology for the Subject Signs. (*Id.* ¶ 20, *admitted*, RSUMF ¶ 20). On or around February 15, 2019, the City of Atlanta issued permits BS-201801047 and BS-201900119 (the "Conversion Permits") approving the upgrades of the Subject Signs to LED sign faces. (*Id.*)

6

The decision to issue the Conversion Permits was challenged by three parties in the following appeal to the Board of Zoning Adjustment of the City of Atlanta ("BZA"): Appeal No. V-19-059 (the "BZA Appeal"). (*Id.* ¶ 21, *admitted,* RSUMF ¶ 21). Ultimately, the BZA denied the challenge to the Conversion Permits. (*Id.* ¶ 23, *admitted,* RSUMF ¶ 23). Two of the challenging parties then appealed the BZA's decision regarding the Conversion Permits to the Superior Court of Fulton County ("Superior Court") in Civil Action No. 2019CV323401 (the "Superior Court Appeal"). (*Id.* ¶ 24, *admitted,* RSUMF ¶ 24). In the Superior Court Appeal, the City defended the decision of the BZA to deny the challenge to the Conversion Permits. (*Id.* ¶ 25, *admitted,* RSUMF ¶ 25).

On December 12, 2019, the Superior Court reversed the decision by the BZA and held that the Conversion Permits were "wrongly issued." (Deposition of Gregory Pace dated April 26, 2022 ("Pace Dep."), Ex. 6, Doc. 37-2 at 88–95, "Superior Court Order"). In reaching this conclusion, the Superior Court reasoned that the original 1993 permits were wrongly issued pursuant to the 1982 Sign Code. (*Id.* ¶ 26, *admitted,* RSUMF ¶ 26). The Superior Court Order stated, in pertinent part:

> The original permits allowing two signs to be constructed at a single location with outsized dimensions and less than 300 feet from Interstate 85 were wrongly issued. The signs were unlawful at inception and there is no evidence in the record that the City's ordinances were

> ever amended in a way that would have brought the
> signs into conformity . . .
>
> For the reasons discussed above, the Court finds that the
> City and the signs' owner are mistaken and that the
> original permits were improperly issued, making the
> two signs nonconforming at birth.

(RSUMF ¶ 26). Nothing in the Superior Court Order required the Subject Signs to
be removed or for the City to take any enforcement actions related to the Subject
Signs. (*Id.* ¶ 28, *admitted,* RSUMF ¶ 28).

The City of Atlanta Department of City Planning Office of Buildings hand-
delivered a Zoning Correction Notice for 1655 Peachtree St., NE Atlanta, GA 30309
(the "Zoning Correction Notice") to Multimedia on or around November 17, 2020.
(*Id.* ¶ 29, *admitted,* RSUMF ¶ 29). This Zoning Correction Notice ordered
Multimedia to remove the Subject Signs from the Property. (*Id.*).

In response, Multimedia (through counsel) sent a letter to the City of Atlanta
Department of City Planning Office of Buildings on or around December 9, 2020,
to which the City did not respond. (*Id.* ¶¶ 30–31; *see supra* n.**Error! Bookmark not
defined.**).

On or around December 18, 2020, the City issued arrest citations to
Anderson, the president of Multimedia, and Harrison Coleman, Peach's registered
agent. (SUMF ¶ 32, *admitted,* RSUMF ¶ 32). These December 2020 citations list the
alleged violations as "illegal signs" against section 16-28A.013(a)(ii), the "1982

Atlanta Zoning Ordinance," and "Chapter 28A." (*Id.* ¶ 33, *admitted,* RSUMF ¶ 33).
They also describe the alleged conduct that "the accused did" as follows: "Fail to
remove two unlawful non-conforming signs from the building . . . that were ruled
to be illegal pursuant to Final Order (2019CV323401) issued by [Judge McBurney]
of the Superior Court of Fulton County on December 12, 2019." (*Id.*).

These December 2020 arrest citations were followed by two additional arrest
citations, issued to the same individuals with the same allegations and different
citation numbers in March 2021. (*Id.* ¶ 34, *admitted,* RSUMF ¶ 34). The Court refers
collectively to the December 2020 and March 2021 citations as the "Arrest
Citations."

After this lawsuit was filed, the City agreed to stay the Arrest Citations
"pending the outcome" of this lawsuit. (*Id.* ¶ 35).

## Legal Standard

Federal Rule of Civil Procedure 56(a) provides "[t]he court shall grant
summary judgment if the movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law."

A factual dispute is genuine if the evidence would allow a reasonable jury
to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
(1986). A fact is "material" if it is "a legal element of the claim under the applicable

9

substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex*, 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). All reasonable doubts should be resolved in the favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). In addition, the court must "avoid weighing conflicting evidence or making credibility determinations." *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000). When the record as a whole could not lead a rational trier of fact

to find for the nonmoving party, there is no genuine dispute for trial. *See Fitzpatrick*, 2 F.3d at 1115.

## Discussion

### I.   The *Rooker-Feldman* Doctrine

Federal courts are courts of limited jurisdiction. *Univ. of South Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999).  Thus, the Court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings; indeed, a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking. *Id.*

In the Court's prior Order, it asked the parties to brief whether the Superior Court Order precludes this Court's review under the *Rooker–Feldman* doctrine. "The *Rooker-Feldman* doctrine eliminates federal court jurisdiction over those cases that are essentially an appeal by a state court loser seeking to relitigate a claim that has already been decided in a state court." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1281 (11th Cir. 2018)[2]; *see also Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) ("The *Rooker-Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court.") (citing

---

[2] The doctrine takes its name from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

*D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983)); *Christophe v. Morris*, 198 F. App'x 818, 825 (11th Cir. 2006) (holding that the *Rooker-Feldman* doctrine divested the district court of subject-matter jurisdiction to hear a number of eviction-related claims when the state court had already ruled that a tenant violated her lease and the landlord was legally entitled to an order of eviction); *Carr v. U.S. Bank as Trustee for TBW Mortg. Backed Tr. Series 2006-6*, No. 18-14987, 2019 WL 6605444, at *2 (11th Cir. Dec. 5, 2019) (holding that the *Rooker-Feldman* doctrine barred district court from reviewing state court judgment that effectively authorized the tenant's removal from the property). The purpose of the doctrine is "to ensure that the inferior federal courts do not impermissibly review decisions of the state courts—a role reserved to the United States Supreme Court." *Target Media Partners*, 881 F.3d at 1281.

Under the *Rooker-Feldman* doctrine, a federal court is barred from adjudicating a claim that was "either (1) one actually adjudicated by a state court or (2) one inextricably intertwined with a state court judgment." *Id.* at 1286 (internal quotation marks omitted); *see also Indus. Commc'ns & Elecs., Inc. v. Monroe Cty.*, 134 F. App'x 314, 317 (11th Cir. 2005) ("Under the *Rooker-Feldman* doctrine a lower federal court lacks subject matter jurisdiction in a claim where "the relief requested . . . requires determining that the state court's decision is wrong or . . . void[ing] the state court's ruling.") (quoting *Desi's Pizza, Inc. v. City of Wilkes-Barre*,

321 F.3d 411, 419 (3d Cir. 2003)). A claim is inextricably intertwined "if it asks to effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues." *Target Media Partners*, 881 F.3d at 1286 (internal quotation marks omitted). "A claim that at its heart challenges the state court decision itself—and not the statute or law which underlies that decision—falls within the doctrine because it complains of injuries caused by state-court judgments and invites review and rejection of those judgments." *May v. Morgan Cty.*, 878 F.3d 1001, 1005 (11th Cir. 2017) (quotations and citation omitted).

For example, in *May*, a landowner purchased lakefront property intending to develop a vacation home which she planned to use for short term vacation rentals. *Id.* at 1002–03. After adoption of a county ordinance barring short term rentals in the landowner's zoning district, she was criminally cited. *Id.* at 1003. She filed suit in Georgia state court challenging the ordinance on federal constitutional grounds, but her challenge was dismissed on state law grounds for failing to seek a rezoning and conditional use permit from the county and for failing to challenge the ordinance within 30 days of its passage. *Id.*

She later filed a federal court suit, arguing among other things that under 42 U.S.C. § 1983, the ordinance "and its ongoing enforcement against her property violated her 'grandfathered constitutional rights.'" *Id.* at 1004. The district court dismissed the suit, citing *Rooker–Feldman*, and the landowner appealed,

13

contending that "*Rooker–Feldman* does not bar her § 1983 claim because she did not bring an as applied challenge to [the ordinance] in this lawsuit, and, even if she did, *Rooker-Feldman* does not apply" because she was not challenging the state court's decision, only the ordinance. *Id.*

However, brushing "[s]emantics aside," the Eleventh Circuit held that "[b]oth her § 1983 claim and her claim for declaratory relief are based on her assertion that she has a 'grandfathered right' to rent her property on a short term basis" and "both claims would require finding that her claim of "vested constitutional right[s]" was not time barred under Georgia law for her failure to file a lawsuit in state court within 30 days of [the ordinance's] passage." *Id.* at 1005.[3] The court recognized that "[a] claim that at its heart challenges the state court decision itself—and not the statute or law which underlies that decision—falls within the doctrine because it 'complain[s] of injuries caused by state-court judgments' and 'invite[s] . . . review and rejection of those judgments." *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The court affirmed the dismissal. *Id.* at 1007.

---

[3] Interestingly, the landowner argued "in the alternative that, even if her § 1983 claim is an as applied challenge to the constitutionality of the ordinance, *Rooker–Feldman* does not apply because the state court in the first civil case lacked subject matter jurisdiction," but the Eleventh Circuit noted that "as of now, we have never adopted that exception." *Id.* (citing *Casale v. Tillman*, 558 F.3d 1258, 1261 (11th Cir. 2009)).

In Plaintiffs' Response to the Court's July 29th Order, Plaintiffs point to the Eleventh Circuit's decision in *Behr v. Campbell*, 8 F.4th 1206 (11th Cir. 2021), which they assert "clarified the scope of the *Rooker–Feldman* doctrine to bring it in line with the Supreme Court's guidance." (Pls.' Resp. to Ord. at 2, Doc. 43). In *Behr*, the Eleventh Circuit considered an appeal involving constitutional claims stemming from a custody dispute that had been resolved in state court.  8 F.4th at 1208. The parents–plaintiffs in that case raised "allegations that the defendants violated [the plaintiffs'] Fourth and Fourteenth Amendment rights and federal law in a number of ways—fabricating reports, pressuring the children to make false statements against their father, entering [his] home without permission and on false pretenses, and discriminating against the [the plaintiffs] on the basis of age, sex, disability, and religion." *Id.* at 1209.

The Eleventh Circuit clarified that it had previously adopted an overbroad consideration of the doctrine, one which covered "all federal claims which were, or should have been, central to the state court decision, even if those claims seek a form of relief that might not have been available from the state court." *Id.* (quoting *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1333 (11th Cir. 2001)). In light of the Supreme Court's intervening decision in *Exxon Mobil*, the Eleventh Circuit clarified that the doctrine "occupies 'narrow ground' and is 'confined to cases of the kind from which the doctrine acquired its name.'" *Id.*  at 1209 (quoting *Exxon*

*Mobil*, 544 U.S. at 284). Having so 'reined in' the doctrine, the Eleventh Circuit reversed the dismissal of damages claims, as the plaintiffs were not seeking to reverse the state court decisions but were "asking [the court] to consider whether their constitutional rights were violated during the proceedings and whether they are entitled to damages for those violations." *Id.* at 1213.

Here, Plaintiffs contend that "none of [their] claims challenge the Superior Court's decision to reverse the BZA's denial of the challenge to the issuance of the Conversion Permits in the Superior Court Appeal" and "[i]n fact, nothing in Plaintiffs' Complaint asks this Court to make any ruling about the Conversion Permits. (Pls.' Resp to Ord. at 12, Doc. 43) (citing Compl, Doc. 1)) "Rather," they assert, "Plaintiffs' Complaint asks this Court to determine whether the 1982 Sign Code is constitutional, which is an issue not addressed by the Superior Court." (*Id.*).

But "[t]his court can have no right to pronounce an abstract opinion upon the constitutionality of a state law. Such law must be brought into actual, or threatened operation upon rights properly falling under judicial cognizance, or a remedy is not to be had here." *Mass. v. Mellon*, 262 U.S. 447, 484 (1923) (quoting *Cherokee Nation v. Ga.*, 30 U.S. 1 (1831) (Thompson, J., concurring)). The Court must review Plaintiffs' request for a declaratory judgment in the context of an actual case or controversy. In looking at the broader controversy, the Court does not

intend to retreat into the now-verboten *Goodman* framework of "all federal claims which were, or should have been, central to the state court decision," 259 F.3d at 1333, but is instead merely being cognizant of its obligation to render declaratory judgments in the context of actual disputes and of the Eleventh Circuit's instruction to look out for "cleverly cloak[ed] . . . pleadings in the cloth of a different claim." *May*, 878 F.3d at 1005.

As the Court noted in its prior order, while the Superior Court did not order removal of the sign, it held that "[t]he Conversion Permits were wrongly issued because the two signs affixed to the 1655 Peachtree Building neither comply with current City ordinances nor are they legally nonconforming signs." (Doc. 37-2 at 95). Both sets of Arrest Citations assert that the Subject Signs are "unlawful non-conforming signs," and reference the Superior Court Order as their basis. (Compl. Exs. 8–11, Docs. 1-8 to 1-11). There is no dispute in this case that the Subject Signs are "nonconforming" under the 2015 Ordinance. In Plaintiffs' Motion for Summary Judgment, they acknowledge that:

> [u]nder Section 16-28A.004 of the 2015 Ordinance, a "Nonconforming Sign" is defined as "[a] sign that was lawfully erected prior to the adoption of this chapter and does not conform to the requirements of this chapter or other provisions of part 16." The 2015 Ordinance allows a nonconforming sign to remain in use as long as the owner of such sign continually maintains it. Thus, the Subject Signs are lawful, nonconforming signs as long as they were lawfully erected prior to the adoption of the 2015 Ordinance and are continuously maintained.

(Pls.' Br. Supp. Mot. at 11) (record citations omitted). The broader case or controversy here is whether the signs are lawful, nonconforming signs and thus may remain erected, and the injury is the Superior Court Order, as recognized by the Arrest Citations' reference to that order.

The Court pauses for a moment to sketch out how Plaintiffs' requested declaratory relief, which purportedly does not reverse the Superior Court Order, would play out. The Court would ostensibly be called upon to enter further relief under 28 U.S.C. § 2202 in the form of enjoining the City from enforcing the Arrest Citations against Plaintiffs. The City could take no action against Plaintiffs to direct them to remove the Subject Signs, but Plaintiffs would eventually need to seek a permit for alterations or renovations to the signs. However, Plaintiff Multimedia could not, for example, re-request the conversion permit, because a valid final judgment on the merits would preclude such an issuance. The signs would exist in some sort of legal limbo, where the City could not remove them, but the Plaintiffs could not alter them. Or, if Plaintiffs contend that the BZA would in fact be required to issue such permits as a result of this Court's declaratory judgment, they are essentially conceding that their injury is the Superior Court Order.

Plaintiffs next contend that the *Rooker–Feldman* doctrine does not apply because they could not have raised their constitutional claims before the Superior Court. It is true that the doctrine does not apply "where a party did not have a

18

reasonable opportunity to raise his federal claim in state proceedings." *May,* 878 F.3d at 1005 (citing *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)). In support of their argument that they lacked an opportunity to raise constitutional claims, Plaintiffs point to the certiorari statute then in effect, O.C.G.A. § 5-4-12 (2019), which provided that "[n]o ground of error shall be considered which is not distinctly set forth in the petition."

Plaintiffs provide the Petition for a Writ of Certiorari in an attachment to the Declaration of Geoffrey Anderson ("Petition," Doc. 44-1 at 6). The Petition enumerates a number of errors, including that "[t]he BZA erred in failing to find and conclude that the rooftop and wall signs at the Property are illegal under the current Sign Ordinance," that "[t]he BZA erred in failing to find and conclude that the rooftop and wall signs at the Property are not 'lawful nonconforming signs' and are not eligible to receive conversion permits under the current Sign Ordinance," and that "[t]he BZA erred in failing to find and conclude that the rooftop and wall signs at the Property were illegal under the 1982 Zoning Ordinance when first permitted," but for obvious reasons does not address the constitutionality of the 1982 Zoning Ordinance. (Petition ¶¶ 29–31).[4]

---

[4] It does appear, then, that the original issuance was within the scope of the Petition. (*Contra* Pls.' Resp. to Ord. at 9, Doc. 43).

Neither party points to any case law that addresses whether an applicant can raise constitutional grounds for denying a third party's petition for certiorari outside the scope of the petition. However, Georgia case law supports the notion that constitutional review of agency action is "inherent in the power of the judiciary." *Bd. of Zoning Adjustment of Atlanta v. Fulton Fed. Sav. & Loan Ass'n*, 338 S.E.2d 730, 732 (Ga. App. 1985); *see also Bentley v. Chastain*, 249 S.E.2d 38 (Ga. 1978)) (specifying that the standard of review in a certiorari proceeding is "[w]hether the agency acted beyond the discretionary powers conferred upon it, abused its discretion, or acted arbitrarily or capriciously with regard to an individual's constitutional rights.").

Moreover, it would appear from the record in this case that Plaintiffs *were* able to expand the scope of the Superior Court Proceedings beyond the errors enumerated in the Petition by arguing, albeit unsuccessfully, that "equity requires the Conversion Permits to issue." (Superior Court Ord. at 6, 6 n.7, Doc. 37-2 at 93) (citing *WMM Props., Inc. v. Cobb Cnty.*, 339 S.E.2d 252, 254 (Ga. 1986)).[5] In

---

[5] *WMM Properties* noted that "[o]nce a building permit has issued, a landowner has a right to develop the property pursuant to that permit (during its term or for a reasonable time after its issuance if no term is specified), notwithstanding a zoning or regulatory change subsequent to the issuance of the building permit, and notwithstanding the fact that there has been no substantial expenditure of funds in reliance upon the building permit." 339 S.E.2d at 254. It is unlikely that the BZA would have passed on this question when issuing the permit, and yet Plaintiffs were able to raise the issue before the Superior Court.

addressing this argument, the Superior Court directly addressed Plaintiffs'
purported constitutional rights, pointing out "the signs' owner enjoys no vested
rights here, as 'a permit issued for either an illegal use or an illegal non-conforming
use is void; it cannot be used as an excuse to continue the use in violation of the
zoning ordinance, and it does not vest constitutional rights.'" (Superior Court
Order at 6, Doc. 37-2 at 93) (citing *Corey Outdoor Advert. v. Bd. of Zoning Adjustments
City of Atlanta*, 254 Ga. 221, 227 (1985)).[6]

The Court thus finds that Plaintiffs had an opportunity to raise their
constitutional claims in state court. As the Court noted in its prior Order, had the
Superior Court ruled that the 1982 Sign Code was unconstitutional, it would have
affirmed the BZA's issuance of the Conversion Permits on the grounds that no
valid law prohibited the erection of the Subject Signs in 1993. Had it refused to so
hold, an appeal would lie to the Georgia appellate courts, and ultimately, the
United States Supreme Court. But not to this Court. The Court finds that the
*Rooker–Feldman* doctrine bars Plaintiffs' claims to the extent that they seek review
of the Superior Court Order.[7]

---

[6] As the Court noted in its prior Order, this ruling is also likely dispositive of
Plaintiffs' takings claims.

[7] Lacking subject matter jurisdiction, the Court does not address whether the
preclusion doctrines apply to these claims.

Plaintiffs do identify one hitch with applying the *Rooker–Feldman* doctrine
to this case: Plaintiffs Anderson and Peach were not parties to the Superior Court
Appeal. "The *Rooker-Feldman* doctrine does not bar actions by nonparties to the
earlier state-court judgment simply because, for purposes of preclusion law, they
could be considered in privity with a party to the judgment." *Lance v. Dennis*, 546
U.S. 459, 466 (2006). Assuming for the moment that none of the limited
circumstances for applying *Rooker–Feldman* to nonparties acknowledged by the
Supreme Court in footnote 2 of *Lance* would apply,[8] Plaintiffs are correct that
Plaintiffs Anderson and Peach are separately entitled to a declaration of whether
the Arrest Citations against them were unconstitutionally issued. But in the
Court's reckoning, this is not a case about citations;  this is a case about whether
the Big Peach off I-85 has to come down.

Plaintiffs have made strong arguments about whether the *Rooker–Feldman*
doctrine applies. This is not a clear-cut case; it resides somewhere in between
damages claims sought in *Behr* and declaratory relief sought in *May*. Therefore, the
Court will not proceed to deal with a complicated First Amendment question
which ultimately may not matter to the question of whether Plaintiffs have to

---

[8] "[E].g., where an estate takes a de facto appeal in a district court of an earlier
state decision involving the decedent." 546 U.S. at 466 n.2. The Court also assumes
for present purpose that no basis for abstention applies. *See Redner v. Citrus Cnty.,
Fla.*, 919 F.2d 646, 648 (11th Cir. 1990) (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

remove the Subject Signs. Instead, the Court will exercise its discretion to enter final judgment of dismissal for lack of subject matter jurisdiction as to Plaintiff Multimedia under Federal Rule of Civil Procedure 54(b), which provides that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." The Court finds that there is no just reason for delay for the reasons given above.[9] The Court will stay the remainder of the proceedings as set forth below.

### Conclusion

For the reasons given above, it is

**ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 36) is **DENIED** as to claims by Plaintiff Multimedia and **STAYED** as to the claims of all other Plaintiffs. It is

**FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 56(f)(1), the Court **GRANTS** summary judgment in favor of Defendant City of Atlanta, Georgia and against Plaintiff Multimedia Technologies, Inc. The Clerk is directed to enter a final judgment of dismissal in favor of Defendant City of

---

[9] Moreover, to the extent necessary, the Court hereby certifies that this Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Cf. Gen. Television Arts, Inc. v. S. Ry. Co.*, 725 F.2d 1327, 1330 n.2 (11th Cir. 1984)).

Atlanta, Georgia and against Plaintiff Multimedia Technologies, Inc. for lack of subject matter jurisdiction.

It is **FURTHER ORDERED** that this case is **STAYED** as to the remaining claims of Plaintiffs Peach and Anderson for a period of 30 days from the date of entry of this Order to permit Plaintiff Multimedia to appeal this Order if it so chooses, and in the event such an appeal is taken, until the later of 30 days from the date of entry of this Order or seven (7) days after the issuance of the Court of Appeals' mandate, whichever is later.[10]

**SO ORDERED** this 23rd day of September, 2022.

Victoria Marie Calvert
United States District Judge

---

[10] If the Parties cannot agree on a continued stay of the enforcement of the Arrest Citations during this time, Plaintiff may apply to this Court for an injunction pending appeal under Federal Rule of Civil Procedure 62(d). (*See* Br. Supp. Mot. at 15, Doc. 36-1).

24